WILLIAM COHEN & SON, INC. d.b.a.
Quality Foods, Plaintiff,

v.

ALL AMERICAN HERO, INC., Food Distributors, Inc., Hero U.S.A., Inc. and Alfonso Perez, Assignee of All American Hero, Inc., jointly, severally and/or in the alternative, Defendants.

Civ. A. 87–3375(SSB).

United States District Court,
D. New Jersey.

Aug. 16, 1988.

Michael D. Sinko, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Cherry Hill, N.J., for plaintiff.

Arthur L. Pressman, Craig R. Tractenberg, Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for defendants.

## OPINION

BROTMAN, District Judge:

I. INTRODUCTION

Presently before the court is defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), Count I of plaintiff's Complaint alleging the existence of an illegal tying arrangement in violation of the federal antitrust laws or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P.

56. Plaintiff has cross-moved for summary judgment alleging that the undisputed facts at bar establish a prima facie case of illegal tying and that, therefore, it is entitled to a judicial declaration that defendants' conduct is a *per se* violation of the federal antitrust laws. Jurisdiction over this dispute is premised both on diversity of citizenship, 28 U.S.C. § 1332, and a provision of the United States Code vesting the district courts with original jurisdiction over matters pertaining to the federal antitrust laws, 28 U.S.C. § 1337. For the reasons set forth below, we hereby deny both defendants' motion for dismissal of Count I and plaintiff's cross-motion for summary judgment.

## II. FACTS AND PROCEDURE

Plaintiff William Cohen & Son, Inc., d/b/a Quality Foods is a New Jersey corporation which manufactures sandwich steak meats and other portion control meat products, and if specially requested, sells seasoned marinated steak sandwich meats. Defendant All American Hero, Inc. (hereinafter "Hero") is an operator of retail steak sandwich shops, which are either company-owned or operated by franchisees. Defendant Food Distributors, Inc. (hereinafter "FDI") is an affiliate of Hero and functions as the sole distributor of sandwich steaks to Hero's franchisees.[1]

Approximately five years ago, Hero solicited the services of plaintiff for the purpose of developing and manufacturing a steak sandwich "with certain flavoring added to produce a product with a distinct and identifiable flavor which would be sold by [Hero's] franchisees." (*See* Plaintiff's Complaint at ¶ 9). The by-product of this union of sliced meat and special spices would be a carnivorous creation known to consumers as the "All American Hero Steak," a culinary concoction which would appear prominently on the menus of Hero's franchisees nationwide. The Complaint alleges that at the time plaintiff and Hero entered into their business relationship, defendant Hero formed FDI to act as the sole distributor of steak meat to its franchisees. Pursuant to the restrictive covenants of their franchise agreements, franchisees were required to purchase all of their steak meats exclusively from FDI, which established a telephone line and number on the plaintiff's premises for just such a purpose. The Complaint alleges that the sole function of FDI was to mark-up the cost of plaintiff's sandwich meats before sale to the franchisees. (*See* Plaintiff's Complaint at ¶ 10).

After a flavorful five-year business relationship during which plaintiff purportedly served as the sole manufacturer of the All American Hero Steak Sandwich, the union grew rancid. In or around July, 1987, plaintiff notified Hero of its decision to terminate the latter's line of credit because of an alleged accrued arrearage in the amount of $99,264.15, excluding interest charges. Purportedly as a result of plaintiff's refusal to extend further credit, Hero instructed its franchisees to terminate all business dealings with plaintiff and to place all further steak sandwich orders with FDI through a Florida telephone number.[2]

On August 24, 1987, plaintiff filed suit in this court alleging violations of the federal antitrust laws, tortious interference with business relationship and breach of contract. Contemporaneous with the filing of their responsive pleadings, defendants moved to dismiss or, in the alternative, for summary judgment on Count I of the Complaint, which alleges the formation of an illegal tying arrangement designed to foreclose Hero's franchisees from access to the wholesale steak market in purported violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.

1. Alphonso Perez and Hero U.S.A., Inc. were joined as additional defendants to this action by way of plaintiff's motion to amend its Complaint, which was granted by the Honorable Joel B. Rosen, United States Magistrate for the District of New Jersey, on June 2, 1988. They were not defendants to this action at the time the above cross-motions were filed.

2. Neither the oral nor written submissions of the parties reveal who replaced plaintiff as supplier of steak meats to FDI.

· Soon thereafter, plaintiff cross-moved for summary judgment on Count I on the ground that its Complaint contains sufficient factual allegations to warrant a judgment on the pleadings. On June 3, 1988, plaintiff was granted leave to amend its Complaint to join Hero U.S.A., Inc. and Alphonso Perez as co-defendants and to include an additional count alleging a claim for fraudulent conveyance of assets.

## III. DISCUSSION

Dismissal of a complaint, or of a claim in a complaint, for failure to state a claim is permissible only when it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bryson v. Brands Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980); Fed.R.Civ.P. 12(b)(6). On a motion to dismiss the complaint, the court must review plaintiffs' allegations in the light most favorable to them, and draw all reasonable inferences in their favor. *Bryson, supra; Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977). Despite the liberal pleading requirements, the court need only accept the truth of facts. "[C]onclusory allegations, unsupported by facts, cannot withstand a motion to dismiss." *See County of Cook v. MidCon Corp.*, 574 F.Supp. 902, 920 (N.D.Ill.1983), *aff'd* 773 F.2d 892 (7th Cir.1985).

Alternatively, Fed.R.Civ.P. 56(c) provides that summary judgment may be granted when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Insurance Co.*, 721 F.2d 118 (3d Cir.1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Knoll v. Springfield Township School District*, 699 F.2d 137, 145 (3d Cir.

1983); *Smith v. Pittsburgh Gage and Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Supreme Court has interpreted Fed.R.Civ.P. 56(c) as mandating:

> ... the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, if the plaintiff's evidence is merely "colorable" or is "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511.

A tying arrangement is one in which the availability of one item (the "tying" item) is conditioned upon the purchase or rental of another item (the "tied" item). Such an arrangement exists where, for example, a manufacturer of copying machines (the "tying" item) conditions the sale of its machines on the buyer's agreement to purchase all the paper (the "tied" item) used in the machine from the seller. The principal dangers of a tie-in include the denial of free access by competitors to the market for the tied product and the coercion of purchasers to forego their free choice between competing products. *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 6, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958).

It has been long recognized that certain tying arrangements "pose an unacceptable risk of stifling competition and therefore are unreasonable *per se*." *Jefferson Parrish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 9, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984). In other words, a plaintiff alleging an illegal tying arrangement need not demonstrate that the effects of the tie are unreasonable, as he would normally be re-

quired to do in a suit brought under the Sherman and Clayton Acts. Thus, absent some legitimate business justification for the tying arrangement, a plaintiff who satisfies his burden of proving its existence is entitled to judgment as a matter of law. *Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 375 (5th Cir. 1977).

However, although tying arrangements have been viewed traditionally as presumptively illegal, not all refusals to sell products separately can be said to restrain competition. The Supreme Court has concluded that:

> If each of the products may be purchased separately in a competitive market, one seller's decision to sell the two in a single package imposes no unreasonable restraint on either market, particularly if competing suppliers are free to sell either the entire package or its several parts.

*Hyde*, 466 U.S. at 11–12, 104 S.Ct. at 1558. In fact, "[b]uyers often find package sales attractive; a seller's decision to offer such packages can merely be an attempt to compete effectively—conduct that is entirely consistent with the Sherman Act." *Id.* at 12, 104 S.Ct. at 1558. Thus, the essence of a tying arrangement which runs afoul of the antitrust laws "lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Id.*

As promulgated by the Supreme Court, the *per se* standard of tying requires proof of three elements: (1) the allegedly tying and tied items must entail *separate* products or services which are readily distinguishable in the eyes of the consumer, and the availability of the tying item must be conditioned upon purchase or rental of the tied item; (2) the party allegedly imposing the tie must have sufficient "economic power" in the tying product to restrain significantly free competition in the market; and (3) a "not unsubstantial" amount of commerce in the tied item must be affected by

the agreement. *See, e.g., United States Steel Corp. v. Fornter Enterprises, Inc.*, 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977); *United States v. Loew's Inc.*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); *Northern Pacific Railway Co. v. United States, supra.* However, even if plaintiff satisfies all three elements of his proof burden, thus establishing the existence of a *per se* tying arrangement, the defendant is entitled to demonstrate a legitimate business justification for the tie-in restriction, *Mozart Co. v. Mercedes–Benz of North America, Inc.*, 833 F.2d 1342, 1348–49 (9th Cir.1987), but he must show that no less restrictive alternative is available. *Phonetele, Inc. v. American Telephone & Telegraph Co.*, 664 F.2d 716, 738–39 (9th Cir.1981), *cert. denied*, 459 U.S. 1145, 103 S.Ct. 785, 74 L.Ed.2d 992 (1983).

Defendants move to dismiss plaintiff's illegal tying claim or, in the alternative, for summary judgment on the grounds that (1) plaintiff has failed to allege that the tying product (i.e., the franchise license granted by Hero to its franchisees) and the tied product (i.e., the meat supply purchased by the franchisees) are separate and distinct items in the eyes of the consumer, and that (2) even if the two items are separate and distinct, defendants lack sufficient economic power in the tying product market to impose significant restrictions in the tied product market. Defendants contend that plaintiff's failure to prove either one of the first two elements of its *prima facie* case warrants dismissal of Count I. Plaintiff cross-moves for summary judgment on Count I, asserting that the undisputed facts clearly establish a *per se* illegal tying arrangement in violation of Section 1 of the Sherman Act and § 3 of the Clayton Act. We conclude that there exist numerous issues of fact which preclude either party from prevailing on their respective motions.

The crux of defendants' argument regarding the first element of plaintiff's burden of proof is simply that "the Complaint fails to allege that a 'tying' product exists or that [there] are two separate products that [can] be tied." (*See* Defendants' Memorandum of Law in Support of Motion to

Dismiss at 13). Plaintiff responds that Paragraphs 17 and 18 of its Complaint sufficiently allege the existence of two separate and distinct products or items—the franchise license (the "tying" item)[3] and the sandwich steak meat (the "tied" item). The language of paragraph 17 states specifically that:

In order to control and dominate the supply market to its franchisees and to foreclose competition in that market, Defendant AAH has imposed certain tie-in arrangements between it and its *franchisees* to purchase the *sandwich steak* only from an entity approved by Defendant AAH, which, in reality, was its shell corporation, Defendant FDI. (emphasis added).

■ As a threshold matter, we conclude that paragraph 17, although unartfully drafted, alleges the existence of a "tying" and "tied" product with sufficient clarity to permit defendants to frame an adequate responsive pleading. We note that defendants did, in fact, file such a responsive pleading addressing this precise issue on the same date that they filed the instant motion to dismiss. The case relied on by defendants in support of their position that plaintiff's tying claim lacks sufficient clarity, *Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838 (S.D.N.Y. 1982), *aff'd*, 724 F.2d 290 (2d Cir.1983), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984), is distinguishable from the one at bar in that the defendants in the former case moved to dismiss *prior to* the filing of their answer, in part, because of their inability to frame a responsive pleading due to the alleged vagueness of plaintiff's tying claim. In that case, the district court dismissed plaintiff's tying claim without prejudice, giving plaintiff 20 days to amend its complaint to plead the tie-in violation with greater specificity. Thus, we conclude that plaintiff's complaint satisfactorily distinguishes the "tying" from the "tied" product so as to make amendment unnecessary.

■ The more important issue, however, is whether the All American Hero Steak (the "tied" item) is separate and distinct from the franchise (the "tying" item) which sells it for purposes of satisfying the first element of plaintiff's burden of proof. Defendants contend that the steak sandwich meat is indistinguishable from the All American Hero franchise and that, therefore, defendants' practices are not subject to challenge on antitrust grounds. In support of their position they cite numerous cases in which tying claims were dismissed due to plaintiff's failure to allege the existence of two distinct products. (*See* Defendants' Memorandum of Law at 5–6). Defendants rely principally on the Indiana district court's ruling in *Kentucky Fried Chicken Corp. v. Marion–Kay Co., Inc.*, 620 F.Supp. 1160 (S.D.Ind.1985), dismissing counterclaimant's tying claim due to its failure to allege the existence of two separate products. In that case, Marion–Kay Co., Inc. a manufacturer and distributor of chicken seasoning, counterclaimed against Kentucky Fried Chicken Corp. (hereinafter "KFC") pursuant to Section 1 of the Sherman Act alleging, *inter alia*, that KFC had unlawfully tied the sale of its franchises to the purchase of its own special KFC seasoning from only its two designated distributors. In dismissing Marion–Kay's tying claim on a motion for summary judgment,[4] the court concluded that "the use of the KFC trademarks and service marks is so interrelated with KFC seasoning that no person could reasonably find that the fran-

---

**3.** It is now widely accepted that a franchise or trademark license may be regarded as a "tying" item for purposes of alleging an illegal tying arrangement in violation of the federal antitrust laws. *See e.g., Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 375–76 (5th Cir. 1977); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 47 (9th Cir.1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232 (1972).

**4.** The *KFC* court noted that the issue of whether there exist two separate and distinct items is generally one left to the trier of fact; however, where the relevant facts are not in dispute, summary judgment is the appropriate mechanism for resolving the matter. *KFC Corp. v. Marion–Kay Co., Inc.*, 620 F.Supp. at 1169. We agree with that court's conclusion and, like the material facts in *KFC*, those at bar are also uncontroverted, and, thus, this particular issue is ripe for a legal determination.

chise and KFC seasoning are two separate products." *Id.* at 1171.

The *Marion–Kay* court placed great weight on the Ninth Circuit's decision in *Krehl v. Baskin–Robbins Ice Cream Co.,* 664 F.2d 1348 (9th Cir.1982) (also cited by defendants at bar) which upheld the district court's dismissal of plaintiff's tying claim at the close of its case-in-chief due to plaintiff's failure to establish that the Baskin–Robbins' trademark was a separate product from Baskin–Robbins' ice cream. In *Krehl,* the Ninth Circuit concluded that the type of franchising system employed by Baskin–Robbins franchisers was what the court called a "distribution type system." Under this distribution system, the franchisees serve "merely as conduits through which the trademarked goods of the franchiser flow to the ultimate consumer." *Id.* at 1353. Thus, in such a system, the franchise (or trademark) itself serves as nothing more than a representation of the end product marketed by the system. *Id.* at 1353–54. Thus, in *Krehl,* the trademark license awarded to Baskin–Robbins franchisees was deemed inseparable from the ice cream itself, and the court concluded that "[t]he desirability of the trademark [was] therefore utterly dependent upon the perceived quality of the product it represent[ed]." *Id.* at 1354. In upholding the district court's Rule 41(b) dismissal of plaintiff's tying claim, the Ninth Circuit concluded that:

> . . . the tie-in doctrine can have no application where the trademark serves only to identify the alleged tied product. [footnote omitted]. The desirability of the trademark and the quality of the product it represents are so inextricably interrelated in the mind of the consumer as to preclude any finding that the trademark is a separate item for tie-in purposes.

*Id.*

The *Marion–Kay* case and the several other cases cited by defendants in support of their motion to dismiss Count I of plaintiff's Complaint all involve franchisees which serve as little more than bridges across which the trademark products must travel to reach the ultimate consumer. We do not have such a franchising system in the case at bar. The system employed by All American Hero is more closely akin to what the Ninth Circuit referred to as the "business format system." *Id.* at 1353. Under this format, each franchisee is generally responsible for the production and preparation of the system's end product— in this case, the All American Hero Steak Sandwich. The business system format is distinguishable from the distribution format in that:

> The franchiser merely provides the trademark and, in some cases, supplies used in operating the franchised outlet and producing the system's products. Under such a system, there is generally only a remote connection between the trademark and the products the franchisees are compelled to purchase. This is true because consumers have no reason to associate with the trademark, those component goods used either in the operation of the franchised store or in the manufacture of the end product.

*Id.*

The All American Hero franchise is a classic example of a franchising system structured along the lines of the format described above. The individual franchisees are charged with the responsibility of preparing the system's end-product—the All American Hero Steak Sandwich. Since the steak sandwich is only one of many items sold by the franchisees, (*see* Defendants' Memorandum of Law, Exhibit C), it is unlikely that consumers will associate the Hero trademark with the portion control steak meats supplied by plaintiff and used in the preparation of the All American Hero Steak Sandwich. Unlike the trademark licenses awarded to franchisees in the Kentucky Fried Chicken and Baskin–Robbins' cases, the trademark license awarded to Hero's franchisees does not identify the tied product (i.e., the portion control meats). In fact, the associations consumers would make with the Hero trademark are as wide-ranging as the offerings on the menu itself: steak sandwiches, cold-cut sandwiches and a veritable cornucopia of salads.

■ Therefore, it is clear that the portion control meat products manufactured by plaintiff and supplied by defendant FDI are items separate and distinct from the Hero trademark itself and, thus, plaintiff has satisfied the first element of its proof burden which requires the aggrieved party to show the existence of a severable tying and tied product.

■ On the other hand, the question of whether the seller has sufficient economic power in the tying product to impose an appreciable restraint on free competition in the tied product—the second factor in determining the existence of a *per se* illegal tying agreement—cannot be resolved on the basis of the scanty factual record before this court. The Supreme Court in *Hyde* stated unequivocally that no antitrust liability would attach without a showing that "the seller has some special ability—usually called 'market power'—to force a purchaser to do something that he would not do in a competitive market." 466 U.S. at 13–14, 104 S.Ct. at 1559. In that opinion, the Court identified three possible sources of market power, any of which if proven to exist by the plaintiff might make *per se* condemnation appropriate: (1) a grant of a patent or similar monopoly by the federal government to the seller; (2) a situation in which "the seller's share of the market is high"; or (3) "when the seller offers a unique product that competitors are not able to offer." *Id.* at 17, 104 S.Ct. at 1560–61.

Plaintiff alleges in its Complaint that the illegal tying arrangement imposed by the defendants on the franchisees "substantially restrain[ed], restrict[ed] and limit[ed] competition in the *wholesale steak market,* and foreclose[d] and limit[ed] defendant's franchisees from access to competitive suppliers." (*See* Plaintiff's Complaint at ¶ 8) (emphasis added). Judging from the language of Paragraph 18, plaintiff's position appears to be that defendant Hero wields sufficient economic leverage in the wholesale steak market to bring about anti-competitive results. However, plaintiff has submitted not a scintilla of evidence that would shed light on Hero's position within the wholesale steak market and permit this court to make a determination as a matter of law that Hero's market strength was sufficient to satisfy the second element of its burden of proof.

Defendants take issue with plaintiff's identification of the relevant market and contend that the appropriate market for analysis is the "market for all steak sandwich centered franchises." (*See* Defendants' Memorandum of Law at 11). Alternatively, they argue that even if the wholesale steak market is viewed as the relevant market, Hero's share of that market could hardly be considered "significant." They allege that Hero's share of the *retail* steak market is less than 6.5 percent, well below what could possibly be deemed a coercive share. We need not resolve the issue at this time of which of the two markets alleged is the relevant one, since we conclude that the record before this court is far too scanty to support a judgment as a matter of law as to either one.

We assume that the "market power" issue will be the focal point of extensive discovery, as will the other tie-in issue which, as of yet, remains unsubstantiated —the amount of interstate commerce in the tied product affected by the alleged tying arrangement. We note that these two issues are questions for jury determination, *see e.g., Mozart Co. v. Mercedes–Benz of North America, Inc.,* 833 F.2d 1342 (9th Cir.1987), or matters of law for judicial determination *only* after the record has been extensively developed. *See, e.g., Siegel v. Chicken Delight, Inc.,* 448 F.2d 43 (9th Cir.1971), *cert. den.,* 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972).

Therefore, having found the absence of several crucial issues of material fact, we conclude that summary judgment would be inappropriate at this time, and thus deny plaintiff's and defendants' respective motions.

An appropriate order has been entered.

### ORDER

This matter having come before the court on defendants' motion to dismiss Count I of plaintiff's Complaint alleging an

illegal tying arrangement in violation of the federal antitrust laws or, in the alternative, for summary judgment, and plaintiff's cross-motion for summary judgment as to Count I; and

The court having considered the oral and written submissions of the parties; and

For the reasons stated in the court's opinion filed this date;

IT IS on this 15th day of August, 1988, hereby

(1) ORDERED that defendants' motion to dismiss or, in the alternative, for summary judgment on Count I of plaintiff's Complaint is *DENIED*.

(2) Plaintiff's cross-motion for summary judgment on Count I is *DENIED*.

No costs.