**KAKEN PHARMACEUTICAL COMPANY, LIMITED, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

**No. IP 86–1241–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 28, 1989.

On Motion For Reconsideration Nov. 15, 1989.

512

Jack C. Berenzweig, Melvin F. Jager, Willian Brinks Olds Hofer Gilson & Lione, Ltd., Chicago, Ill., David H. Badger, Willian Brinks Olds Hofer Gilson & Lione, Indianapolis, Ind., for plaintiff.

Stephen W. Terry, Jr., George W. Pendygraft, George M. Plews, Baker & Daniels, Indianapolis, Ind., for defendant.

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment. The issues raised herein have been fully briefed and are ready for resolution. For the reasons set forth below, the Court GRANTS the defendant's motion for summary judgment as to Counts I, II, IV, V, VI and VII and DENIES the defendant's motion for summary judgment as to Count III.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Kaken Pharmaceutical Company, Limited ("Kaken") filed its suit October 20, 1986, against the defendant, Eli Lilly and Company ("Lilly").[1] This legal confrontation concerns a 10mg sample Salinomycin ("SAL"), a feed additive for ruminant animals, sent to Lilly by Kaken. Like the story of the princess and the pea, it is wonderous that so small a source could produce so great a rub.

In October of 1972, after reading a report about the substance in the Japan Medical Gazette, Lilly wrote to Kaken requesting a sample of SAL. Kaken responded by sending a 10mg sample, and requested samples of related substances from Lilly. Lilly complied with Kaken's request, and thus began a series of exchanges of substances between the parties lasting a number of years. Of particular importance in the instant case was a 100mg SAL sample sent by Kaken to Lilly pursuant to a February 15, 1973, request. For reasons not entirely clear, Kaken followed up that sample with a letter that stated Kaken hoped "emphatically" that the SAL sample would be used for identification purposes only. Lilly appeared to acquiesce to this concern in an April 30, 1973, letter giving assurances that the sample would be used only for identification purposes.

At the heart of this dispute is Kaken's allegation that Lilly used the samples to run a rumen screen test in violation of the alleged agreement between the parties to use the samples only for identification purposes. A rumen screen test uses a culture of microorganisms found in a cow's stomach, and measures changes in the organisms' metabolic products following the addition of an unknown compound to the culture. Kaken claims it was improper for Lilly to run such tests, and that only tests for identification purposes were to be conducted.

1. Kaken is a Japanese corporation with its principal place of business in Tokyo, Japan. Lilly is an Indiana corporation with its principal place of business in Indianapolis, Indiana. This Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332. It is undisputed that Indiana law applies in this case.

Kaken anticipated tests, such as a paper chromatographic test. A paper chromatographic test is a procedure whereby a compound being analyzed produces spots on absorbent paper. Scientists then attempt to determine the nature of the compound by the location of the spots showing antibiotic activity. Kaken anticipated that the testing would be for identification purposes only.

On June 10, 1974, Lilly filed a United States patent application claiming a method of using SAL to increase feed utilization efficiency in ruminant animals. A related application was filed on September 2, 1976, and on April 18, 1978, Lilly's patent was granted as U.S. Patent No. 4,084,224 ("224 patent"). Kaken claims this patent was made possible through the unlawful use of the SAL samples sent to Lilly by Kaken. Kaken charges that Lilly's patent prohibits Kaken from obtaining royalties from A.H. Robins ("Robins"), the exclusive Kaken licensee of SAL in the United States. Essentially, Kaken claims Lilly plans to use its patent to prohibit SAL from competing in the United States market with Monensin, a polyether antibiotic developed by Lilly. Lilly brought a successful patent infringement suit against Robins that resulted in an August 1985 judgment prohibiting Robins from selling SAL for cattle in the United States.

Kaken's lawsuit is comprised of seven counts. The allegations include breach of express trust, constructive trust, breach of express contract, fraud, constructive fraud, interference with contract, and interference with prospective business relationships. Kaken asks for both legal and equitable relief, including an order that Lilly assign the 224 patent to Kaken, or in the alternative, prevent Lilly from enforcing the patent against Kaken. Aside from denying many of the material allegations in Kaken's complaint, Lilly asserts the defense of statute of limitations, laches, failure to state a claim, waiver and estoppel, res judi-

cata and collateral estoppel, and the statute of frauds.[2]

## II. APPLICABLE STANDARDS OF REVIEW

The defendant in this case has filed a motion for judgment on the pleadings, or in the alternative, for summary judgment. A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides in pertinent part:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .

Numerous affidavits have been filed in this cause by both sides. Ample opportunity to respond to those affidavits has passed. Accordingly, the Court rules the defendant's motion will be treated as a motion for summary judgment.[3]

Rule 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It can no longer be disputed that when the standard embraced in Rule 56(c) is met summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As stated in *Celotex*, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the Federal

---

**2.** The defenses raised in the defendant's motion for judgment on the pleadings or for summary judgment do not mirror the defenses asserted in its answer. This opinion addresses only the issues raised in the defendant's motion.

**3.** Having decided to treat the defendant's motion as a motion for summary judgment, the Court will hereafter refer to it as such.

Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. *Id.* at 477 U.S. at 327, 106 S.Ct. at 2555. Decisions of the Seventh Circuit are in conformity with this view. *See Spellman v. Commissioner,* 845 F.2d 148 (7th Cir.1988).

Moreover, the mere existence of a factual dispute is not by itself sufficient to bar summary judgment. A factual dispute does not preclude summary judgment unless the disputed fact is outcome determinative. *Hossman v. Spradlin,* 812 F.2d 1019 (7th Cir.1987); *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Clampitt v. City of Ft. Wayne,* 682 F.Supp. 401 (N.D.Ind.1988), *aff'd,* 864 F.2d 486 (7th Cir.1988). Guided by these standards, the Court now considers the defendant's motion for summary judgment.

## III. DISCUSSION

The Court notes at the outset of this discussion that statutes of limitation play a paramount role in ruling on Lilly's motion for summary judgment. In this regard, Kaken's allegation of fraudulent concealment could affect all the limitation periods discussed herein. Accordingly, the Court initially will discuss whether the fraudulent concealment alleged by Kaken tolls the statutes of limitations. The Court then will discuss each allegation contained in Kaken's complaint, the applicable statutes of limitation and how these limitation periods impact Kaken's claims.

### A. *Fraudulent Concealment*

The plaintiff claims the applicable statutes of limitation are tolled because of Lilly's alleged fraudulent concealment, pursuant to I.C. 34-1-2-9. This statute provides:

If any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the limitation after the discovery of the cause of action.

Thus, if Lilly did engage in fraudulent concealment as contemplated by this statute, the limitation periods were tolled until Kaken's discovery of facts from which it could reasonably determine a cause of action against Lilly existed.

The burden of proof of avoiding a limitation bar is on the plaintiff, who must show reasonable care and diligence to detect the alleged fraud. *Lambert v. Stark,* 484 N.E.2d 630 (Ind.App.1985). Thus, the burden here is on Kaken to show that the limitation period should be tolled.

Under most circumstances, I.C. 34-1-2-9 will extend a party's time to file suit only when the opposing party actively and intentionally conceals a cause of action. However, where the defrauder has a duty to disclose material information to individuals with whom he has a fiduciary or confidential relationship, the requirements of active and intentional conduct do not apply. *Dotlich v. Dotlich,* 475 N.E.2d 331 (Ind. App.1985). Regardless of any concealment, however, the statute of limitations begins to run when a plaintiff acquires information from which a reasonable man with diligence would discover a cause of action. *Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1106–1107 (7th Cir.1985) (applying Indiana law); *Adams v. Luros,* 406 N.E.2d 1199, 1203 (Ind.App.1980); *Toth v. Lenk,* 164 Ind.App. 618, 330 N.E.2d 336, 340–41 (1975). These guidelines point to a dispositive question. Namely, despite the alleged concealment by Lilly, could a cause of action have been discovered by Kaken under the facts alleged or shown in uncontroverted affidavits had Kaken exercised reasonable diligence. The Court finds as a matter of law that had Kaken employed reasonable diligence, it would have discovered a cause of action.

According to exhibits filed in this cause it appears that Kaken was aware of a potential cause of action against Lilly as early as January 1979, but nevertheless failed to file suit until more than seven years later. The Court will review the facts of the matter earlier than January 1979.

In a letter dated March 3, 1973, from Kaken to Dr. John Whitney of Lilly, it was stated by Kaken, "we hope emphatically

that our sample of SAL has a limited use in the purpose of identification of related compounds within your laboratories." This letter, sent on the heels of a 100mg SAL sample which went to Lilly without such limiting language, appears to indicate a concern on Kaken's part that perhaps Lilly was using the SAL for more than just identification. At least Kaken wished to clarify their own intentions of the exchange.

The next series of significant events began on June 10, 1974, as briefly described in Part I herein. On this date, Lilly filed a U.S. Patent Application, Serial No. 479,954, which claimed a method of using SAL to increase feed utilization efficiency in ruminant animals. On September 2, 1976, Lilly filed a Divisional Patent Application, making a similar claim. On April 18, 1978, the 224 patent was granted. Kaken again failed to take any legal action despite the issuance of this patent covering the use of SAL to increase feed utilization efficiency. Kaken also took no part in an unsuccessful suit filed by A.H. Robins challenging the validity of the 224 patent. It is unclear how much of this was even known to Kaken at the time, although Lilly's patent filing is hardly indicative of any latent concealment by Lilly.

▬ The telling blow to Kaken's fraudulent concealment argrument, however, came on January 1, 1979, in the form of a three-page letter from Kaken to Lilly. Haruhiko Kobayashi, Director of New Product Development for Kaken, sent the letter to Dr. Ronald R. Brannon, head of Microbiological and Fermentation at Lilly. The letter discussed in detail the relationship between Lilly and Kaken as to the SAL samples. In the letter, Kaken ac-

knowledged notice of the patent application and the granting thereof. The letter also stated that Kaken was "seriously concerned about the possible problem which might occur in connection with this patent." The letter concluded, saying "we would be most happy if we could have the opportunity to discuss this problem with you and avoid any legal confrontation." This letter is unequivocal proof that Kaken was concerned about Lilly's patent, which Kaken claims was pursued based on unauthorized studies conducted on SAL samples sent to Lilly by Kaken. Furthermore, the letter, by referring to a possible "legal confrontation," clearly shows Kaken was aware that it had a potential legal right to exercise.

In light of the foregoing undisputed facts, Kaken's claim of fraudulent concealment must fail as a matter of law. Reasonable diligence on Kaken's part would have resulted in the rapid pursuit of its alleged legal claim against Lilly regardless of any assurances Lilly might have made to Kaken regarding the use of the SAL samples.[4] By failing to do so, Kaken has sat on its rights, and cannot now raise the issue of fraudulent concealment to rectify past mistakes. For the purposes of this decision, Kaken's claim began to run no later than January 13, 1979.[5]

## B. *Breach of Trust*

▬ Kaken claims in Count I of its complaint that Lilly's action in relation to the SAL samples constituted a breach of an express trust between Kaken and Lilly. Lilly claims the three-year statute of limitation of I.C. 30-4-6-12 applies to bar the plaintiff's breach of trust claim,[6] while

4. In February 1979, Robins' representative, William King, met with Lilly officials to discuss, among other things, the 224 patent and its effect on Robins. After the meeting King told Kaken he was satisfied that no misuse of the SAL sample had occurred. Kaken claims King never was informed Lilly conducted a rumen screen test, and therefore was further misled by Lilly.

5. Though the limitations period may have been earlier, the facts of this case will demonstrate that a more precise time is unnecessary. Accrual of a cause of action requires both a wrongful

act and injury. *KFC Corp. v. Marion–Kay Co.*, 620 F.Supp. 1160 (S.D.Ind.1985). When the 224 patent issued in April 1978 the alleged wrongful act (misuse of the SAL sample) had already occurred. The injury also had occurred in that the patent prohibited Kaken from marketing SAL in the United States as intended. For further discussion of this issue, see *infra* § III(E).

6. The defendant also claims the two-year statute of limitations for injury to personal property (I.C. 34-1-2-2(1)) applies to bar *all* counts of the

Kaken claims the 10–year period contained in I.C. 34–1–2–3 applies. The elements of an express trust are set forth in I.C. 30–4–2–1, and require, *inter alia*, written evidence of the trust to be enforceable. However, the Court need not determine for summary judgment purposes whether an express trust exists in this case, because even if an express trust does exist the plaintiff's claim would be barred by the appropriate statute of limitation.

The most appropriate limitation period is contained in I.C. 30–4–6–12. This statute provides in pertinent part:

Unless previously barred by adjudication, consent or limitation, any right against a trustee for breach of trust shall be barred as to any beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the right is commenced within three (3) years after receipt of the final account or statement.

The plain language of this statute of limitations indicates that claims for breach of trust cannot be brought more than three years after the cause of action has materialized. Because the cause of action for breach of an express trust arose no later than January 1979, and more likely arose when the 224 patent issued in April 1978, the plaintiff's claim, filed on *October 20, 1986*, is time barred.

Kaken asserts the three-year statute of limitations is not applicable in this case because the elements required for the three-year period to commence were not satisfied. These elements were discussed in *Forth v. Forth*, 409 N.E.2d 641 (Ind.App. 1980), as follows:

(1) the trustee must openly disavow or repudiate the trust or the beneficiary must demand the trust asset and be refused; and

(2) the trustee must clearly and unequivocally set up a right and interest adverse to the beneficiary or cestui que trust,

plaintiff's complaint. This argument is ad-

which fact is made known to the beneficiary.

*Id.* at 644.

Because these elements were not satisfied, Kaken argues the 10–year statute of limitations contained in I.C. 34–1–2–3, for "actions not limited by any other statute," must be applied. Such a result is untenable for two reasons.

First, assuming without deciding that this case does involve an express trust, the two-step analysis in *Forth* is satisfied. Lilly, as beneficiary, openly disavowed the trust and set up a right and interest adverse to Kaken when Lilly received the 224 patent. Patenting the use of SAL for increasing feed utilization in ruminant animals clearly was adverse to Kaken's interest, which sought to use SAL for a similar purpose. Furthermore, this fact was made known to Kaken no later than January 1979, when Kaken wrote to Lilly regarding serious concerns involving the SAL samples and the 224 patent. In view of this letter, Kaken cannot maintain as it attempts to in its reply brief that Kaken did not learn of the breach of trust until 1986.

Second, even if the three-year limitation contained in I.C. 30–4–6–12 does not apply, the next most appropriate limitation period is the two-year period for injury to personal property, I.C. 34–1–2–2(1). The plaintiff's assertion that the "catch-all" 10–year period of limitations contained in I.C. 34–1–2–3 applies is incorrect. The two-year statute of limitations provides:

The following actions shall be commenced within the periods prescribed after the cause of action has accrued, and not afterwards:

(1) For injuries ... to personal property ... within two (2) years.

The ten-year statute of limitations provides:

All actions not limited by any other statute shall be brought within ten (10) years, unless the cause of that action arose before September 1, 1982, in which case the action must be brought within fifteen (15) years. In special cases,

dressed elsewhere.

**518**

where a different limitation is prescribed by statute, the provisions of this section shall not apply.

In light of I.C. 34–1–2–2(1), which provides a limitation period for injuries to personal property, it would be improper to apply a longer limitations period intended for actions "not limited by any other statute." The interplay of these two statutes was considered in *Mack v. American Fletcher National Bank*, 510 N.E.2d 725 (Ind.App.1987), wherein the court applied a two-year limitation against beneficiaries bringing an action for breach of trust.

Considering first I.C. 30–4–6–12, the *Mack* court stated the statute clearly raises the inference that the legislature considered the statute of limitations for any breach of trust to be shorter than the period provided for by I.C. 34–1–2–3. *Mack*, 510 N.E.2d at 738. The court also noted the importance of the preambular phrase "[u]nless previously barred by limitation," reasoning that this implied the existence of a statute of limitations even apart from the three-year period. *Id.* The court went on to hold that the beneficiaries' cause of action for breach of trust is an allegation, in substance, of an injury to their trust interest—personal property pursuant to I.C. 30–4–2–7. As such, the pertinent statute of limitations was held to be two years. *Mack*, 510 N.E.2d at 739.

For the aforementioned reasons, the Court finds that the longest possible limitations period for the plaintiff's breach of express trust claim is three years, not ten years, and therefore the claim is barred.

### C. *Constructive Trust*

In Count II of its complaint Kaken asserts a cause of action based on a constructive trust theory. Lilly claims this count should be dismissed, arguing that a constructive trust is a remedy and not a cause of action. Plaintiff's argument in favor of a constructive trust as a cause of action is confusing. In its reply brief, Kaken states that a constructive trust can be a cause of action as well as a remedy, and cites to *Paolino v. Channel Home Centers*, 668 F.2d 721 (3rd Cir.1982), among other cases,

for authority. Soon thereafter, however, the plaintiff cites to several cases for the proposition that a constructive trust is a remedy. Apparently, Kaken seeks to use the *breach* of a constructive trust as a cause of action, and the *imposition* of a constructive trust as a remedy. As will be pointed out, however, such a result is barred by the applicable statute of limitations.

■■■■■■ A constructive trust is an implied trust, lacking in intention to create a trust, arising by operation of law. *Terry v. Davenport*, 185 Ind. 561, 112 N.E. 998, 1001 (1916). Indiana cases hold that statutes of limitations are applicable to constructive trusts. *Terry*, 112 N.E. 998; *Lee v. Hoover*, 72 Ind.App. 126, 124 N.E. 783 (1919). Fraud, actual or constructive, is an essential ingredient of a constructive trust. *Brown v. Brown*, 235 Ind. 563, 135 N.E.2d 614 (1956). Fraud being an essential element, the applicable statute of limitations for an action based on a constructive trust is six years, pursuant to I.C. 34–1–2–1. *Dorothy Edwards Realtors v. McAdams*, 525 N.E.2d 1248, 1252 (Ind.App.1988). Because this purported constructive trust claim was not brought within six years, it is time barred.

■■■■■ One additional note is needed here. The notion of a constructive trust has its roots in equity. *Criss v. Bitzegaio*, 420 N.E.2d 1221 (Ind.1981). Indeed, the plaintiff seeks equitable relief in its complaint in asking for injunctive relief against Lilly. Damages are also sought. The mix of legal and equitable remedies, however, is of no help to the plaintiff in attempting to overcome the statute of limitations bar. It is a well-recognized principle that if there be both a legal and an equitable remedy, and the legal remedy is barred by limitation, the equitable remedy also is barred. *Mack v. American Fletcher National Bank*, 510 N.E.2d 725, 740 (Ind.App.1987); *Lambert v. Billheimer*, 125 Ind. 519, 25 N.E. 451, 452 (1890). Because plaintiff's legal remedy is barred, the equitable remedy suffers a similar fate.

### D. *Fraud*

Kaken also alleges in its complaint that Lilly committed fraud, both actual and constructive, in its handling of the SAL samples supplied by Kaken. Lilly claims that the fraud claims are barred by the six-year statute of limitations contained in I.C. 34–1–2–1. In its reply brief, Kaken does not dispute the application of this statute, but instead argues that Lilly engaged in an ongoing pattern of fraud against Kaken that continued into the six-year limitations period. Kaken's position is that because Lilly allegedly misled Kaken until 1986, the fraud-based causes of action were brought within the limitations period.

 Reliance upon a misrepresentation is a material element of a cause of action in fraud. *Plymale v. Upright*, 419 N.E.2d 756 (Ind.App.1981). One relying upon a representation is bound to exercise ordinary care and diligence to guard against fraud. *Carrell v. Ellingwood*, 423 N.E.2d 630 (Ind.App.1981). The Indiana Supreme Court long ago adopted the maxim *volenti non fit injuria*. *Frenzel v. Miller*, 37 Ind. 1 (1871). The maxim means that one who knows of a risk and voluntarily exposes one's self to that risk cannot later recover for a resulting injury. *Black's Law Dictionary* 1412 (5th ed. 1979). As the court stated in *Frenzel*, "If a party blindly trusts, where he should not, and closes his eyes, where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies *volenti non fit injuria*." *Id.* at 761. This duty of diligence is a legal obligation of a representee, and the failure to exercise the common sense and judgment of which one is possessed "is a practical limitation on the actionability of various representations." *Plymale* at 762.

 Applying this reasoning to the case at bar, Kaken cannot recover upon its fraud claims. As discussed herein regarding the allegation of fraudulent concealment, *supra*, the letter Kaken sent to Lilly in 1979 reveals knowledge on Kaken's part that would have through ordinary diligence revealed the alleged deception to Kaken. Based on the facts that Kaken knew or through ordinary diligence should have known, it cannot be said that there was an ongoing fraud perpetrated by Lilly against Kaken beyond 1979. Supporting this proposition is the fact that Kaken and Lilly are two multi-million dollar corporations, which must through necessity exercise reasonable prudence in business transactions. This principle was noted in *Plymale*, wherein the court stated a number of Indiana cases have held certain representations to be inactionable as a matter of law. *Id.* at 763. Therefore, as a matter of law the causes of action seeking recovery for actual and constructive fraud are time barred because the six-year statutory period expired no later than 1985.

### E. *Interference With Contract and Business Relations*

 Kaken also alleges that Lilly's actions constitute tortious interference with contractual relations and tortious interference with prospective business relations. In particular, Kaken alleges that Lilly interfered with Kaken's exclusive license with Robins, thereby causing Kaken to lose royalties and substantially decrease the value of the contract with Robins. Kaken also alleges that Lilly's activities intefered with prospective business relationships with respect to the license between Kaken and Robins, and the manufacture and sale of SAL in the United States. For the reasons stated below, these claims also were filed too late, and therefore are time barred.

Lilly claims the two-year statute of limitations for injuries to personal property, I.C. 34–1–2–2(1), applies to bar the plaintiff's tortious interference claims, and Kaken does not dispute that this is the proper statute of limitations. Rather, Kaken claims that the statute should not begin running until 1986, when Lilly obtained an injunction against Robins after Robins obtained FDA approval to market SAL in the United States.

In support of this position, the plaintiff cites to *KFC Corp. v. Marion–Kay Co.*, 620 F.Supp. 1160 (S.D.Ind.1985), for the rule that accrual of a cause of action re-

quires both a wrongful act and injury. *Id.* at 1167. In response, the defendant relies on *Shideler v. Dwyer*, 275 Ind. 270, 417 N.E.2d 281 (1981), in which the Indiana Supreme Court clarified potential confusion regarding the accrual of actions. While agreeing with *KFC Corp.* that accrual of a cause of action requires both a wrongful act and injury, this Court believes the reasoning in *Shideler* makes it undisputable that both the wrongful act and injury were completed when the 224 patent issued.

*Shideler* involved an action against an attorney and her law firm for alleged malpractice in drafting a will, and involved the identical two-year statute of limitations being applied here. In *Shideler*, the plaintiff did not bring her action upon the December 14, 1973, death of the testator, but rather waited until after June 30, 1975, the date upon which the probate court decreed the gift to her from the testator's will was void. In rejecting the plaintiff's claim as barred by the statute of limitations, the court asked: when did the damage to the plaintiff result from the defendants conduct? The answer was at the testator's death, for that was when the will became operative. *Id.*, 417 N.E.2d at 290.

Applying this reasoning to the case at bar, the question becomes: when did the damage to Kaken result from the alleged wrongful conduct by Lilly? The answer in *Shideler* was when the will became operative. The answer here is when the 224 patent became operative. Kaken objects to this reasoning, claiming there could be no royalties for Kaken until Robins received FDA approval for the use of SAL with cattle. Again, the language in *Shideler* is useful. The court in *Shideler* stated:

> For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred.

*Id.* at 289.

The damage occurred here when the 224 patent issued. Because the plaintiff filed its suit more than two years later, the causes of action for tortious interference with contract and business relations are barred by I.C. 34–1–2–2(1).

## F. Breach of Contract

Kaken also asserts a cause of action for breach of contract, claiming Lilly breached an express contract with Kaken to use the SAL samples only for reference standard purposes. Lilly argues that even if the Court does find that a contract exists, the contract is not written and therefore is barred by I.C. 34–1–2–1, the six-year limitations period for contracts not in writing. According to Kaken, the letters exchanged between Kaken and Lilly form a binding written contract and can if necessary be supplemented by common industry practice. Therefore, the plaintiff points out, the contract is governed by the 20–year statute of limitations provided for in I.C. 34–1–2–2(6). Thus, the Court must determine whether a written contract exists as a matter of law.

 It is a fundamental concept of contract law that contract formation requires only three elements: offer, acceptance, and consideration. *Herald Telephone v. Fatouros*, 431 N.E.2d 171 (Ind. App.1982). Implicit in these elements is that the parties to the contract have some meeting of the minds, or in other words, a manifestation of mutual assent. *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.App. 1981). This meeting of the minds ordinarily takes the form of the offer and acceptance. *Id.* at 1344. The consideration, on the other hand, involves the concept of a bargained for exchange. *Wavetek Indiana, Inc. v. K.H. Gatewood Steel Co.*, 458 N.E.2d 265 (Ind.App.1984); *Burdsall v. City of Elwood*, 454 N.E.2d 434 (Ind.1983). In the case at bar the alleged written contract is comprised of several letters. This is of no negative consequence. A written contract need not be in a single writing, but may be contained in letters constituting a correspondence between the parties. *Suyemasa*, 420 N.E.2d at 1345. It is with this backdrop that the Court reviews the exchange of letters between Kaken and Lilly.

The initial correspondence at issue here was an October 25, 1972, letter from Lilly to Kaken. (Attachment "A" to the plaintiff's complaint). In this letter, Lilly states: "If available I would appreciate receiving about 10mg (of SAL) to be used as a paper chromatographic standard." Kaken responded November 2, 1972, and stated: "In accordance with your request I am sending you a small sample of (SAL) ... and I shall be pleased if it is of any value in your future work." (Attachment "B" to the plaintiff's complaint.) This letter also requested samples of Monensin A, B & C from Lilly for identification purposes. It is these letters that the plaintiff initially claims constitute the necessary offer and acceptance.

Specifically, Kaken asserts that the offer was contained in the October 25 letter, wherein Lilly stated the SAL sample would be used as a paper chromatographic. The plaintiff claims this was a promise and therefore an offer. In addition, the plaintiff asserts the acceptance was contained in the November 2 letter, wherein Kaken stated the SAL had been sent in accordance with Lilly's request. As for consideration, the plaintiff claims this was the SAL itself. In the alternative, the plaintiff states it received a benefit from the exchange "by ensuring the uninterrupted continuation of the important industry practice of exchanging antibiotic samples ... thereby saving time and money." (Plaintiff's reply brief, page 28, footnote 8.) Kaken asserts that these "commitments" were reaffirmed during future correspondence between the parties.

Lilly challenges Kaken's assertion initially by claiming there was no offer. An offer has been defined as "a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance." Restatement of Contracts § 22 (1932), *cited with approval in Suyemasa*, 420 N.E.2d at 1344–45. Applying this definition from Kaken's perspective, it is as if Lilly said: "I promise to use the SAL sample *only* as a paper chromatographic sample in return for your promise to send the SAL sample." While it is the law that every term of the contract need not be embodied in the written document, the Court will not go so far as to insert terms into an instrument that were not clearly intended by the parties. An offer must be "sufficiently certain to enable a court to understand what is asked for, and what consideration is to mature the promise." *Oedekerk v. Muncie Gear Works*, 179 F.2d 821, 824 (7th Cir.1950). To ask this Court to find an offer here is to ask too much.

The letters relating to the second SAL sample sent to Lilly from Kaken are a different matter. Pursuant to a February 15, 1973, letter, Lilly requested a second SAL sample "for use as a reference standard." (Attachment "E" to the plaintiff's complaint.) Kaken responded in a March 9, 1973, letter that a 100mg sample would be sent "in accordeance with your request." (Attachment "F" to plaintiff's complaint.) This letter was followed immediately with a March 13, 1973, letter by Kaken stating "we hope emphatically that our sample of (SAL) has a limited use in the purpose of identification." Lilly responded April 30, 1973, stating, "I can assure you that this material will be used only for identification purposes." (Attachment "H" to the plaintiff's complaint.)

Viewing this correspondence in a light most favorable to the plaintiff, it is possible that a contract was formed. Unlike the earlier correspondence between the parties, these three letters indicate a promise by Lilly that the SAL will be used only for identification purposes. The Court is mindful that statements of wishes, hopes, or desires are not considered to be promises or offers. J. Calamari & J. Perillo, *The Law of Contracts* 35 (3rd ed. 1987). The Court cannot say as a matter of law, however, that the limited use of SAL by Lilly was a mere hope.

Industry custom may have played a role in the formation of a contract between Kaken and Lilly. Thus, a disputed question of fact exists regarding what constitutes industry custom, and how this may have affected the intent of the parties, and therefore summary judgment is improper.

Kaken maintains it is common practice for laboratory professionals in the pharmaceutical industry to exchange small samples of laboratory compounds for the limited use as reference standards. In accordance with this custom, Kaken asserts, each sample shipment is conditioned upon the understanding that the recipients will use the samples only to identify unknown compounds and not to develop commercial uses or otherwise establish a competitive advantage to the detriment of the supplier. Lilly, on the other hand, contends that the exchanged sample may be used for any purpose, and that no restrictions are placed on the use of the samples.

Contrary to Lilly's assertion, however, there is authority for holding that industry custom is relevant to determine whether a party reasonably believed that communications with another party formed a binding contract. *See Molton, Allen and Williams, Inc. v. Harris*, 613 F.2d 1176, 1180, 198 U.S.App.D.C. 443 (1980). Indeed, in *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 445 F.Supp. 507 (N.D. Maine 1977), the court stated that industry custom is one of several factors used to determine whether a contract was formed. *Id.* at 513. Industry custom can play a major role when an informal understanding between parties later is litigated in court. *Ebasco Serv. Inc. v. Penn P. & L. Co.*, 460 F.Supp. 163 (E.D.Pa.1978) (wherein the court noted as significant the trade custom of electric utilities or their agents to agree to purchase millions of dollars worth of equipment on only a handshake or a sketchy preliminary document.) These cases obviously are not binding on this Court. However, in view of the importance industry custom could play in the case at bar, and the lack of Indiana law holding the inquiry into custom irrelevant, the Court is unwilling to summarily dismiss the plaintiff's breach of contract claim.

Lilly also maintains that summary judgment is appropriate because reference to industry custom involves parol evidence, and therefore subjects any alleged contract to a six-year statute of limitations. Therefore, Lilly states, the breach of contract claim is time barred. In making this asser-tion, however, Lilly fails to cite any supporting authority. The Court itself found few references to the relationship between industry custom and parol evidence in relation to contractual statutes of limitations. However, Corbin addressed the subject and stated:

> Neither the parol evidence rule nor the statute of frauds excludes oral proof of applicable custom or usage, either for the purpose of interpreting and explaining the terms of an integration or written memorandum, or for the purpose of filling gaps by the addition of provisions that are not expressed. A written memorandum is not insufficient to satisfy the statute because it does not state the customs or usages that form part of the agreement. Oral proof of them, supplementing the written memorandum or contract, is admissible, and the whole contract as thus established will be enforced.

A. Corbin, *Corbin on Contracts* § 528 (1950).

Thus, the reasoning set forth by Corbin holds that custom and usage is not parol to a written contract. Rather, it is as if custom is embodied in the writing itself, and resorting to custom does not create an oral contract for the purpose of determining the applicable statute of limitations. Therefore, should industry custom in this case prove sufficient to find an enforceable contract, the fact that parol evidence was used to determine the industry custom will not adversely affect the plaintiff in regard to the statute of limitations.

Lilly also argues there can be no contract because of a lack of consideration. As Lilly states in its supporting memorandum, page 20, "Kaken's tardy effort to impose an additional condition was without the additional consideration necessary to support such an additional condition or modification." In support of this rule, the defendant cites *Myers v. Maris*, 164 Ind. App. 34, 326 N.E.2d 577 (1975). While this rule is properly stated, it is inapplicable here. The additional consideration was the

future use and benefit by Lilly of the 100mg SAL sample sent by Kaken. Lilly, and likely Kaken as well, received a benefit from Lilly's use of this SAL sample as evidenced in an April 8, 1976, letter from Lilly to Kaken. In that latter, Lilly enclosed a manuscript submitted for publication in *Biomedical Mass Spectrometry,* and indicates the SAL sample supplied by Kaken "was used in this study as a reference standard." Such a future benefit is insufficient to validate the prior condition on the SAL sample, and therefore precludes the granting of summary judgment.

One final argument put forth by Lilly is that its April 30 assurance regarding the use of the SAL sample is irrelevant because by the time Kaken's March 13 letter was sent "no further rumen screening tests were conducted before Lilly applied for the 224 patent." Harrison Aff., para. 15. Such a statement, however, simply raises another issue of material fact and therefore is another reason why summary judgment is improper as to the breach of contract claim.

Because the Court finds that a written contract could exist based on the letters exchanged between Kaken and Lilly, the plaintiff's breach of contract claim cannot be dismissed at this point based upon the statute of limitations. Therefore, it is unnecessary to determine at this point what role industry custom and usage might play in this action.

## IV. CONCLUSION

After sorting through a myriad of claims and defenses, the Court has determined that the plaintiff has waited too long in bringing all but one of its claims. All counts of the complaint, except for the breach of contract claim, are dismissed pursuant to the defendant's motion for summary judgment. The plaintiff's attempt to toll the statutes of limitation by alleging fraudulent concealment cannot succeed because even if the defendant did attempt to conceal its activities, reasonable diligence would have alerted the plaintiff of its claim. Failure to pursue these claims resulted in the running of the statute of limitations on all but the breach of contract claim.

As a matter of law, the Court cannot say a written contract did not exist. Therefore, summary judgment is not appropriate only as to Count III.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

Pursuant to a September 28, 1989, Order, this Court granted the defendant Eli Lilly and Company's motion for summary judgment as to Counts I, II, IV, V, VI, and VII of the complaint filed by Kaken Pharmaceutical Company. Summary judgment was denied as to Count III of the complaint. On October 13, 1989, Kaken filed a motion asking this Court to reconsider and reverse its ruling on Lilly's summary judgment motion. In the alternative, Kaken asked for certification under 28 U.S.C. § 1292(b). Kaken also asked this Court to clarify its ruling regarding the role of industry custom and usage in this litigation. For the reasons discussed herein, the Court DENIES the motion for reconsideration and certification.

## I. MOTION FOR RECONSIDERATION

The motion for reconsideration asserts that summary judgment was improper because the Court erroneously ruled on two critical issues of fact. As phrased by Kaken, these issues are: (1) what Kaken knew; and, (2) what Kaken should have known as of January 13, 1979. For the sake of brevity, the Court will not again set forth the multitude of facts involved in this litigation. The facts are sufficiently described in the September 28 Order. In support of its motion, Kaken makes three main points. These points are: (1) the '224 patent did not disclose Lilly's use of a rumen screen test; (2) the January 13, 1979, letter negates, rather than indicates, an awareness of a cause of action by Kaken; and (3) Kaken followed a reasonable course of investigation. In support of its motion for reconsideration, Kaken filed two supplemental affidavits.

**524**

A brief outline of the applicable standard of review for summary judgment is necessary. A more thorough review of this standard is contained in the Court's September 28 Order. In brief, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute, however, does not preclude summary judgment unless the disputed fact is outcome determinative. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir.1987). When it is plain that a trial could have but one outcome, summary judgment is proper. *Spellman v. Commissioner*, 845 F.2d 148 (7th Cir.1988).

Reminded of the appropriate standard of review, the Court now addresses Kaken's motion. The central argument of the motion is that the Court misconstrued the January 13, 1979, letter sent by Kaken to Lilly, wherein it is stated a meeting was desired between the parties "to avoid any legal confrontation." The Court found this language indicative of knowledge on Kaken's part that it had a potential cause of action against Lilly. In its motion for reconsideration, Kaken alleges for the first time that the "legal confrontation" sought to be avoided was an action for infringement of the '224 patent brought by Lilly against Kaken or its licensee. The two affidavits filed in conjunction with Kaken's motion for reconsideration advance this new position.

 If the plaintiff truly interprets this clause as it now claims, this interpretation should have been argued prior to the Court's ruling on the motion for summary judgment. Absent considerations not applicable here, a party can not return to court following an adverse ruling on summary judgment and ask a court to reconsider its judgment because of facts alleged in new affidavits. See *Butler v. Sentry Ins. A. Mut. Co.*, 640 F.Supp. 806 (N.D.Ill.1986) (holding a plaintiff could not make arguments based on legal theories and supporting facts that could have been advanced during the summary judgment process for the first time on a motion for reconsidera-

tion of an order granting summary judgment on dismissal); *American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n*, 633 F.Supp. 201 (N.D.Ill.1986). The affidavits submitted by Kaken are untimely, and will not be considered because Kaken has failed to make any showing why the facts therein were not brought forth earlier. *Michigan State Podiatry Ass'n v. Blue Cross and Blue Shield of Michigan*, 681 F.Supp. 1239 (E.D.Mich.1987); *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24 (1st Cir.1980) (holding an affidavit filed 10 days after summary judgment was entered was insufficient to allow judgment to be set aside where no explanation was given for failure to present the affidavit or its contents earlier and no claim was made that further facts became known to the plaintiff only after judgment had been entered).

The Seventh Circuit has followed this reasoning in discussing the limited role of a motion for reconsideration. In *Publishers Resource v. Walker–David Publications*, 762 F.2d 557 (7th Cir.1985), the court stated unequivocally:

> Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment ... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.

*Id.* at 561. *See also Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982); *Wielgos v. Commonwealth Edison Co.*, 127 F.R.D. 135, 138 (N.D.Ill.1989). These holdings mandate the conclusion that Kaken can not argue for a new interpretation of the January 13, 1979, letter based upon affidavits filed after a ruling on a motion for summary judgment.

In an apparent attempt to explain the untimely filing of the affidavits, Kaken states: "These affidavits were not submitted previously because Kaken believed that the January 13, 1979 letter was clear on its face and Kaken was unaware that anyone could reasonably differ with respect to its interpretation." Plaintiff's motion for reconsideration, p. 2. This explanation is unacceptable for at least two reasons. First, Lilly advanced the position during summary judgment that the letter indicated possible legal action by Kaken against Lilly. Second, Kaken itself advanced a similar interpretation and in any event never countered Lilly's interpretation until after partial summary judgment was granted against Kaken.

The briefs in support and in opposition to summary judgment bear out these two points. At pages 28–30 of Lilly's motion for summary judgment, the January 13, 1979, letter, filed therewith, is discussed as follows:

> Kaken admits knowledge of Lilly's '224 patent. The letter explains the exchange of samples in great detail and even attaches the very letters which it now claims constitute an express trust, fraud, or a contract. *Kaken even suggests that it might bring legal action against Lilly:* "And we would be most happy if we could have the opportunity to discuss this problem with you to avoid any legal confrontation." Yet for nearly eight years after this letter, Kaken simply let the matter drop. (Emphasis added.)

Lilly described the January 13, 1979, correspondence as "Kaken's accusing 1979 letter," and later states Kaken "first threatened action" in the 1979 letter. *Id.* Finally, the affidavit of Nancy J. Harrison (Attachment A to Lilly's motion for summary judgment) states at para. 25, "Had Kaken brought its present lawsuit *in 1979, as it threatened,* many documents relating to the facts of this dispute which have since been destroyed under Lilly's regular retention policy would have been retained." (Emphasis added.) In view of these statements, Kaken will not be heard to now claim that it was "unaware" such an interpretation was reasonable.

Kaken's own statements undercut its belated attempt to alter the understood meaning of the letter in question. As stated at page 26 of Kaken's answering brief: "The correspondence between Kaken and Lilly defeats any claimed acquiescence (on Kaken's part). The January 13, 1979, Kaken letter *strongly disapproved of Lilly's patenting of salinomycin and offered to discuss the problem to 'avoid any legal confrontation.'* " (Emphasis added.) In addition, nowhere in Kaken's 49–page answering brief does it attempt to rebut Lilly's position that the letter indicates Kaken had knowledge of its potential cause of action. Finally, the supplemental affidavits filed by Kaken were those of Haruhkio Kobayshi and Hajime Shibuya. Both of these individuals had previously submitted affidavits in which this new interpretation of the January 13, 1979, letter was not discussed. Kobayshi, who wrote the letter, states in para. 9 of his original affidavit only that he was "concerned that Kaken and its licensee Robins might be prevented from selling salinomycin for use in ruminant animals in the United States." Kaken could easily have discussed its newly raised interpretation of this letter in Kobayshi's original affidavit but did not. Having had a full and fair opportunity to make this argument and having declined to do so, Kaken cannot file affidavits following an adverse summary judgment ruling and attempt to have that judgment set aside.

Kaken's argument for reconsideration places too much emphasis on the January 13, 1979, letter. Despite Kaken's attempt to characterize the matter differently, the Court's summary judgment order was founded upon a multitude of factors other than this letter. It is true, as Kaken points out, that the Court stated this letter was the "telling blow" to Kaken's fraudulent concealment argument. However, at footnote 5 the Order clearly states that the statute of limitations could have begun to run sooner than January 13, 1979. Thus, even if the letter is viewed as Kaken now claims it should be, numerous other factors discussed in the Court's September 28 Order and herein support the conclusion that

Kaken cannot raise the issue of fraudulent concealment as a defense to the running of the statute of limitations.

In a related matter, Kaken argues the Court's decision is in error because Kaken could not have known of its cause of action against Lilly until it was revealed that Lilly conducted rumen screen tests on the SAL. Kaken claims it did not obtain this knowledge until 1986, when Lilly admitted in patent litigation conducting a rumen screen test on the Kaken SAL samples. Such a holding would eliminate the established concept that reasonable diligence be exercised in discovering one's cause of action. The evidence in this case reveals Kaken had numerous reasons to fear possible misuse of the SAL by Lilly. Among these reasons, as discussed in the Court's previous Order, was the issuance of the '224 patent and Kaken's knowledge thereof. Kaken also admits to noticing a change of the wording in Lilly's requests for additional SAL samples, indicating a possible broader use of the SAL by Lilly. Additionally, Lilly never wrote to Kaken, as promised, explaining what Lilly had done with the samples.

It also is uncontroverted that as early as 1976 Kaken learned that Lilly's U.S. patent applications included a description of SAL and that one of the applications claimed the use of SAL for ruminant animals. Kaken's response to Lilly's supplemental affidavit, page 2. Kaken also had expressed concern that its licensee would be prevented from selling SAL for ruminant use in the United States. Kaken admits to having knowledge of these facts and others. Accordingly, reasonable diligence by Kaken should have alerted Kaken to its cause of action. For the reasons discussed herein and in its September 28 Order, the Court refuses to hold that the cause of action did not begin to run until 1986, when Kaken alleges to have first learned of the rumen screen tests. Accordingly, the motion to reconsider is DENIED.

## II. CERTIFICATION FOR APPEAL

■ Kaken has requested that in the event this Court does not reverse its September 28 Order, certification be granted under 28 U.S.C. § 1292(b) for an immediate appeal. In support of this request, Kaken alleges the Order involves a controlling question of law on which there are substantial grounds for a difference of opinion, and that an immediate appeal will materially advance the ultimate termination of the litigation. This language merely tracks the wording of § 1292(b). Kaken makes little or no argument for certification other than restating this language.

The procedure contemplated by § 1292(b) has been described many times. The Seventh Circuit discussed § 1292(b) certification in *Fisons, Ltd. v. United States*, 458 F.2d 1241 (7th Cir.1972), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972). As noted in Lilly's memorandum in opposition to reconsideration, the court in *Fisons* stated: "[i]n every application under § 1292(b) the appellant has the burden of persuading the court of appeals that *exceptional circumstances* justify a departure from the basic policy of postponing appellate review until after entry of a final judgment." (Emphasis added.) *Id.* at 1248. The court then cautioned that "special care must be taken to avoid the risk that a § 1292 appeal may actually impede rather than expedite, the conclusion of the entire case." *Id.*

Another writer described § 1292(b) as follows:

> Ideally, § 1292(b) could be used to allow interlocutory appeals whenever the district court and the court of appeals agree that immediate review is a good gamble. The difficulty and general importance of the question presented, the probability of reversal, and the hardship on the parties in their particular circumstance, could all be considered.

C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3930 (1977) [hereafter *Wright & Miller*]. After reviewing the issues contained in the September 28 Order, the Court believes many reasons exist to deny certification. First, there are not "substantial grounds for a difference of opinion." As discussed in Section I, *supra*, much of Kaken's argu-

ment for reconsideration is based upon supplemental affidavits that were not timely filed. In addition, denying certification will not work a hardship on the parties. Though the Court granted summary judgment against six of Kaken's seven counts, the breach of contract claim remains. This count encompasses the spirit of Kaken's entire complaint—a breach of an agreement between Kaken and Lilly regarding use of the SAL sample.

Additional factors support the Court's decision. Granting certification in this instance would result in piecemeal litigation, as well as added delay and expense. *See Allegheny Airlines v. LeMay*, 448 F.2d 1341, 1343 (7th Cir.1971), *cert. denied*, 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 553 (1971). This case does not present such "exceptional circumstances" that certification should be granted. *Fisons* at 1248. The issues involved are not so difficult and complex as to require certification. Essentially, the issue is whether there are genuine issues of material fact that would preclude summary judgment. As stated in *Wright & Miller*, "[e]ven when the question is the supposed question of law whether there are any genuine issues of material fact that may preclude summary judgment, it seems better to keep courts of appeal aloof from interlocutory embroilment in such factual details." *Id.* at § 3930. Accordingly, Kaken's request for certification is DENIED.

### III. CLARIFICATION OF CONTRACT RULING

Kaken has requested that this Court clarify the portion of its September 28 Order discussing the breach of contract claim. In particular, Kaken requests this Court to clarify precisely what role industry custom and usage will play as to all letters exchanged between Kaken and Lilly.

As the Order states, as a matter of law the first exchange of letters did not create a contract between the parties. None of the essential terms of a contract—offer, acceptance, and consideration—are contained in these writings. Kaken asks that industry custom be used to insert the word

"only" into these letters. To do so, however, would clearly go beyond the allowable limits of interpretation and gap-filling, and instead would involve an attempt to use industry custom to create a contract where none was intended by the parties. The second series of letters (beginning with the February 15, 1973, letter from Lilly's Dr. Whitney to Kaken's Dr. Miyazaki) dealing with the request for a second SAL sample, however, could be found sufficient to create a contract. Therefore, industry custom is relevant regarding the intent of the parties. Evidence of such custom, however, is limited to contract interpretation, and may not be used to contradict the express terms of the writings.

In summary, because the initial exchange of letters involving the first SAL sample do not even remotely resemble a contract, industry custom cannot be introduced to contradict the clear intent of the parties as embodied in the letters. The second exchange of letters, however, could indeed be viewed as having formed a contract, and industry custom may be introduced to amplify this reasonable interpretation.

IT IS SO ORDERED.